The opinion of the Court was delivered by
JohnstoN, Ch.
In the argument it was said, on behalf of the defendant, that on two former occasions, when this will was before the Court, the right of the defendant to hold the slaves bequeathed, was sustained. But this is hardly supported by the cases (a) referred to. In both cases it was held that the legal title vested in the legatee, but subject to the right of any person to seize the slaves under the law then existing, if any act of emancipation were committed. The first of the cases (State vs. Singletary,) was an indictment for a riot, committed in a violent attempt to seize the negroes still in the custody of the legatee, and the defendants were convicted for their tumultuous conduct, there being no sufficient evidence of the legatee’s having abandoned his proprietary right and dominion. The other case (Rhame vs. Ferguson,) was an action of trover for the slaves ; and the plaintiff’s title was founded on an alleged seizure of them, under the Act of 1800, as having been emancipated contrary to law. The Judge charged the jury that Dangerfield had a “legal title under the will, and that a Court of' law could not take notice of the trusts annexed by the testator, (though a Court of Equity might (as the Judge suggested) regard Dangerfield as a trustee, and the property as *106 liable to escheat.) That if Dangerfield had assented to the emancipation, and, in fact, carried it into effect, they were liable to seizure; and the question was left to the jury, under the circumstances, whether, in fact, a seizure had been made, so as to give the plaintiff a title to the property. A verdict was rendered for the defendant.
There is nothing in these cases to conclude the one now before this Court. In the fonner case the defendants might have been properly convicted for their riotous conduct, whether the slaves were emancipated or not; and in the latter, though the legal title was asserted, and the character or validity of the trusts discarded, as matters not cognizable in a Court of Law; yet the question was left out of the judgment, whether it might not be considered by this Court. In both cases, but particularly in the last, the fact of seizure (the only remedy brought under consideration against unlawful acts of emancipation,) was negatived.
In relation to the general doctrines, applicable to questions of emancipation, several cases have been cited, from our own reporters. (b) It may be sufficient that three of these five cases, Cline vs. Caldwell, Carmille vs. Carmille and Broughton vs. Telfair, all arose under deeds; and these deeds were all executed prior to the Act of 1841. It is not necessary to express any opinion here, as to the propriety of the ruling of the cases at law. So far as points of law were decided by the Law Courts, this Court is bound to follow them; and this is true also as to decisions in the Court of errors. But it would be difficult, if the matter were res integra, to say that, under a deed, executed before the statute of 1841, the legal title was not in the grantee: or that, so long as he abstained from actu *107 ally emancipating the slaves conveyed to him, any adverse title could be acquired by seizure.
The distinction between executed contracts, such as deeds, and contracts executory, is very material, when they are considered with reference to the party entitled to avoid them. If property be passed by executed contract upon an unlawful, base or immoral consideration, or with an unlawful or immoral purpose, he who gave away the property with such an intent can never take advantage of his own wrong to rescind his contract; whereas, if the contract be executory and require the action of Courts of Justice to enforce it, the same party may successfully defend himself, and no Court will decree performance in favor of the other party, who is equally criminal. The deeds in the cases quoted, if void for fraud, were still good against the fraudulent grantors and their privies in the post. The personal representative of such a party after his death, standing in his place and representing him, would be equally bound with himself; and so of his next of kin. As to next of kin, in his life time, — there could be no such persons. It was only by the statute of 1841 that the nearest of kin had such an interest given them, during the life of the grantor, as entitled them to interfere. And I suppose; if it had been possible for the grantor himself to have avoided his deed, and reclaimed ttie property before that statute, the statute took his right away and conferred it on his kindred. This seems to be the scope of the policy of the Legislature. Their object was to cut up by the roots all attempts at emancipation; and to secure this end the self interest of the kindred was called into requisition as an instrument to carry out their measures. But if it had been left in the power of the grantor, the principal party to the fraud intended, to anticipate those thus appointed by the Legislature as its agents, he might only interfere for the purpose of making another and more successful effort. Or he might suffer his right to be barred; or the statute of limitations to *108 hare such operation in bis life time, as speedily to bar his representative.
But the present case arises under a will. As to next of kin, who take by law, it requires a valid will to divest. An unlawful will, or clause of a will, or any unlawful or void provision in a will, never excludes them. As to them, it is no will, and a void or unlawful trust is, as to these persons, no trust. Then, as long as the doctrine of Morrice vs. The Bishop of Durham, quoted in the decree, exists, a legatee to whom property is given, coupled with an ineffectual or unlawful trust, cannot hold the property against the next of kin. No beneficial interest was intended to be conferred on him. The title was conferred on him only to enable him to execute the trust, and when he cannot execute it, equity will not permit him to set up his naked title.
The two other cases quoted of McLeish vs. Burch, and Skrine vs. Walker, are not, in principle, opposed to this doctrine. The doctrine upon which those cases were determined was this : that when a party intends to confer the benefits of property, with conditions which are void, or with the suggestions by way of advice, or request, that (considered as his property) the donee will use it in a particular manner, or treat it so and so, — not amounting to a trust — the property vests as a beneficial gift. No trust was contemplated. No legal duty was intended to be created. The grantor intended to suggest an imperfect obligation, but he also intended to give the property, as property, with all its incidents. Suppose a parent or a husband bequeaths his portrait, or other work of art to his wife or child, with a request that it be not sold, or given away out of the family. Suppose a favorite horse be given with a desire that he be not subjected to the plough, or to drudgery. Suppose that an aged, faithful, or enfeebled nurse be given to a child, with an injunction that she be fed for the residue of her days and no services exacted: or that a choice stock of negroes be bequeathed with the strongest direction (even *109 using words of trust) that they be moderately worked, and only in certain employments, and be fed and clothed in a specified manner. None of these cases present cases of trusts ; and why ? Simply because the property was intended to pass, as property for enjoyment, with all its legal incidents.
Now, whether in the cases mentioned,(a) the construction adopted was correct or incorrect, while by another and a better construction, the words of the testators might have been held to create trusts, is not the question here. The principle of those cases (having arrived at the conclusion that the legacies were intended to be beneficial and not fiduciary) was, that as no trusts were intended, none should be raised to deprive the legatee of his property. This is the whole extent of these cases; and so it is expressed in the judgments given in them.
But in the present ease the language of the testator admits of no such interpretation. He gives “in trust, and for this purpose only,” that the slaves enumerated have the sole control of their time and employment, without the interference or intermeddling of any person in the world further than such friendly assistance as may secure their legal protection. Is not this freedom ? All the rest of his estate is also given “ in trust for this purpose only,” that the enumerated slaves enjoy it, exclusively, without the control of Dangerfield, the nominal donee, or any other person. What benefit or interest was intended to Dangerfield in-the slaves or property, of which all control or dominion is expressly taken away from him ?
We are compelled, therefore, by the explicit language of the testator, to conclude that nothing was given to Dangerfield but a naked title, intentionally coupled with a trust to emancipate. The title was intended as a mere power to feed that trust. The trust was unlawful when the will came into operation ; and, if there had been next of kin, they might have *110 interposed, even before the statute of 1841. As there were no next of kin, the State succeeded to their rights.
The same naked title has been constantly attended with thé same unlawful trust from the death of the testator to the present moment; and the trust being still executory and now incapable of execution, the. case of Blackman vs. Gordon decides, that the trustee may be stripped of his legal title.-
An objection founded on Gill vs. Douglass,(a) is taken in the first ground of appeal, to the effect that as the present defendant is- only administrator of Dangerfield, executor of Broad, he does not represent Broad’s estate which has es-cheated, and, therefore, is not liable to the eseheator who sues him. The power of the eseheator was examined, in that case, only in the light of the statute of 1787. But this officer has rights at common law as well as by statute. He is to make title to escheatable property, and must necessarily proceed according to the circumstances of the case. In this case, if it is necessary to reach the property sought to be subjected through an administrator de honis non aum testamento annexo of Broad,, and such administrator is brought in, in order that the property be placed in his hands, it is manifest that he will be a merely formal party. As administrator he will have no right to rescind the will or reclaim the slaves to his testator’s estate. The substantial right of recision must, at last, be in the escheator.(b) At this stage of the suit we are unwilling to *111 arrest its progress upon a merely technical and unsubstantial ground.
Upon the whole we see nothing to dissent from in the principles of the decree brought up by this appeal. There is a little matter of detail which needs some explanation. It is said in the grounds that the decree requires the defendant to deliver up slaves not in his possession, but which had been seized by Gaillard. An assertion is made in the bill that Gaillard had seized them, but neither party substantiated the fact at the hearing. It seems to have been taken for granted that Gail-lard would obey the decree. But he is not a party. Let the decree be modified by directing that the defendant deliver up such of the slaves as he had in possession at the filing of the bill, or at the hearing, or as he may hereafter get possession of; and that an unconditional delivery by Gaillard to the plaintiff shall be equivalent to a delivery by the defendant.
“With this modification the decree is affirmed, and the appeal dismissed.
DunkiN, DargaN and Wardlaw, CC., concurred.

Appeal dismissed.

 State vs. Singletary, Dud. 220; Rhame vs. Ferguson, Rice, 196.

a) Cline vs. Caldwell, 1 Hill, 423; Carmille vs. Carmille, 2 McM. 454; Broughton vs. Telfair, 3 Rich. Eq. 432; McLish vs. Burch, 3 Strob. Eq. 226; Shrine vs. Walker, 3 Rich. Eq. 266.

 McLeish vs. Burch, and Skrine vs. Walker

а) 2 Bail. 387.

 Johnston, Ch. Certainly there are too many difficulties in declaring that the right of setting aside the legal title of one to-whom property has been conveyed upon an unlawful trust, exists in the representative of the grantor, or that rights arising consequentially from such a conveyance, should be made to depend on such right in- the representative, for a Court to venture lightly on such declaration. Suppose for example acaso like this: A. sells and- conveys, by deed, slaves to B. in trust to emancipate them, and this is done since the statute of 1841. Then A. dies, leaving next of kin. This is not a gift but a sale. Now, add the further fact that the purchase money has proceeded from G., a third person. Has the administrator of A. any right to recover the slaves for which he received the full value ? Are his next of kin entitled to the slaves, or to his estate, consisting of the price ? Can B.’s administrator claim the slaves ? or can his next of kin ?